United States District Court
Southern District of Texas

**ENTERED**

April 07, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| FARYAD KARIMI, | § | |
| Petitioner, | §<br>§ | |
| | § | |
| v. | §<br>§ | CIVIL ACTION NO. 5:26-CV-178 |
| BOBBY THOMPSON, ET AL., | §<br>§ | |
| Respondents. | §<br>§ | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Emergency Amended Petition for a Writ of Habeas Corpus, (Dkt. No. 22), and Respondents' Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. No. 31). The petition alleges that Petitioner's detention in federal immigration custody is unconstitutional. The primary issue before the Court is whether there is a significant likelihood that Petitioner's removal from the United States will occur in the reasonably foreseeable future. For the reasons discussed below, the motion to dismiss will be converted to a motion for summary judgment and it will be denied. The petition will be granted in part and stayed in part.

### I. BACKGROUND

Petitioner is an Iranian national currently detained in federal immigration custody. (Dkt. No. 22-2 at 2).[1] He is not a citizen or legal resident of any country other than Iran, and his only other connection to another country is an expired visitor visa from Brazil. (*Id.*). His family, including his wife and daughter, remain in Iran. (*Id.*). Petitioner is currently detained at the South Texas ICE Processing Center in Pearsall, Texas; however, he was detained at the La Salle County Regional Detention Center in Encinal, Texas, when his petition was originally filed. (Dkt. No. 1).

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

Petitioner has been detained since he attempted to enter the United States on September 16, 2024. (Dkt. No. 22-2 at 2). On March 6, 2025, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). (*Id.*). On August 21, 2025, an Immigration Judge (IJ) granted Petitioner's application for withholding of removal under CAT due to religious persecution in Iran. (*Id.*). The IJ also told Petitioner that he would be released and issued a work permit. (*Id.*). Petitioner has not been released. (*Id.*). On February 15, 2025, an immigration official contacted Petitioner requesting information about his sponsor and asking if he preferred to be removed to Mexico or Brazil. (*Id.*). Petitioner expressed fear of removal to both countries. (*Id.*). He has not been notified of plans to remove him to a third country nor has a country that will accept his removal been identified. (*Id.*).

On February 5, 2025, Petitioner filed a pro se petition seeking review of the constitutionality of his detention given that he was granted protection from removal to Iran under CAT. (Dkt. No. 1). Petitioner later obtained counsel and filed the instant petition. (Dkt. No. 22). The amended petition asserts three claims for relief. First, Petitioner claims that his detention is indefinite, and that it violates the Immigration and Nationality Act (INA). Second, he claims that his indefinite detention violates the due process clause. Finally, he claims that his removal to an undisclosed third country would violate the due process clause. He asks the Court to grant declaratory and injunctive relief, including immediate release.

Since the petition was filed, the agency has internally reviewed Petitioner's custody. Respondents attached to their motion a declaration from an agency officer. (Dkt No. 31-1).[2] According to Supervisory Detention and Deportation Officer Jose E. Aguilar's

---

[2] The Federal Rules of Civil Procedure (FRCP) may apply in habeas corpus proceedings. Rules Governing Section 2254 Cases 1(b), 12 (applying Section 2254 Rules to other habeas corpus petitions and then applying the FRCP to these rules). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). As a general rule, when considering motions to dismiss made pursuant to Rule 12(b)(6), a Court may not consider matters outside of the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). Instead, the Court must look only to the pleadings and must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Zastrow v. Hou. Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015).

If, however, matters outside of the pleadings are presented to the Court in a motion to dismiss, and the Court considers the extrinsic matters, the motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 647–48 (S.D. Tex. 2012). Rule 12(d) requires that the parties "be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

declaration, Immigration and Customs Enforcement's (ICE) Enforcement and Removal Operations' (ERO) San Antonio Field Office initiated several steps in reviewing Petitioner's custody on February 12, 2026, one week after Petitioner filed his pro se petition. (*Id.* at 2). That day, Petitioner was served with notice of a 90-day and 120-day Post-Order Custody Review (POCR), ERO interviewed Petitioner for his 150-day POCR, and ERO requested third-country assistance from ERO Headquarters Removals and International Operations (HQ-RIO). (*Id.*). On February 15, 2026,[3] ERO requested that Brazil accept Petitioner's removal. (*Id.*). On February 18, 2026, HQ-RIO Brazil denied acceptance of Petitioner due to his expired visa. (*Id.*). On February 28, 2026, ERO requested assistance from HQ-RIO again, and on March 2, 2026, HQ-RIO informed ERO that they would work on the request. (*Id.*). As of the date of this Order, there is no evidence in the record that any country has communicated that they will accept Petitioner's removal.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

To their motion, Respondents attach several documents outside of the pleadings. (Dkt. Nos. 31-1, 31-2). The Court will consider the evidence attached to the motion, so the Court converts Respondents' motion to a motion for summary judgment. The Court also finds that the parties have had a sufficiently reasonable opportunity to present evidence under the parties' unopposed briefing schedule. (Dkt. No. 16).

[3] The declaration states that this event occurred on February 15, 2025, but the Court understands this to be a typographical error based on the order of events. As Petitioner highlights, there are a number of other errors in the declaration as well. (Dkt. No. 32 at 7 n.6) ([I]t is labelled 'DECLARATION OF DEPORTATION OFFICER SERGIO VASQUEZ.' . . . It does not state that the 'foregoing is true and correct' as prescribed in 28 U.S.C. § 1746(2). . . . And it is demonstrably not "true and correct" in any event, because it alleges that Mr. Karimi has been detained at the South Texas ICE Processing Center since September 26, 2024 . . . , but Mr. Karimi's original Petition for a Writ of Habeas Corpus was made while Mr. Karimi was detained at the La Salle County Regional Detention Center.).

678 (2009) (citing *Twombly*, 550 U.S. at 555). This does not require detailed factual allegations but does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "accept as true all well-pleaded facts." *Rosenblatt v. United Way of Greater Hou.*, 607 F.3d 413, 417 (5th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Once a party has properly moved for summary judgment under Rule 56, the non-movant must demonstrate which "specific facts" show that there is a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

### C. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687

(2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### III. DISCUSSION

As a threshold matter, the Court converts Respondents' motion to dismiss to a motion for summary judgment. As explained *supra* in footnote two, the Court considers the evidence attached to Respondents' motion and therefore considers the motion as a motion for summary judgment.

Turning the Petitioner's claims, the Court notes that it will not consider Petitioner's third-country removal claim because it is premature. Finding that the claim is premature at this stage, the Court will **STAY** his third-country removal claim for disposition at a later date.[4] Two claims remain in the petition, both asserting that Petitioner is entitled to release because he is indefinitely detained. Respondents move to dismiss, asserting that Petitioner's detention is lawful under 8 U.S.C. § 1231. The Court construes this as a motion for summary judgment on the same basis—that Petitioner is lawfully detained.

First, the Court will examine its jurisdiction to hear these claims. Second, the Court will analyze Petitioner's detention and likelihood of removability in the reasonably foreseeable future under *Zadvydas*. Ultimately, the Court will deny the motion for summary judgment, grant the petition, and order Petitioner's release after finding that he is indefinitely detained.

### A. The Court Has Jurisdiction to Hear These Claims

In their motion for summary judgment, Respondents challenge the Court's jurisdiction to hear Petitioner's due process claims. (Dkt. No. 31 at 6). Respondents cite two cases to support their argument that the Court lacks jurisdiction, relying on *C.R.L. v. Dickerson*, No. 4:25-CV-175, 2025 WL 1800209 (M.D. Ga. June 30, 2025) and *Diaz Turcios v. Oddo*, 3:25-CV-83, 2025 WL 1904384 (W.D. Pa. July 10, 2025).

As the Court held in *Vargas Istamo*, the Court does have jurisdiction to hear these indefinite-detention claims because neither of these cases address the Court's jurisdiction

---

[4] This determination has been similarly made in other cases decided by the Court. *Vargas Istamo v. Perez*, No. 5:25-cv-186, slip op. at 5 (S.D. Tex. Dec. 19, 2025); *Chang v. Perez*, No. 5:25-cv-294, slip op. at 4 (S.D. Tex. Feb. 11, 2026).

to hear detention claims, which are the central claims before the Court in the instant case, and "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688; *Vargas Istamo*, No. 5:25-cv-186, slip op. at 6 (Dec. 19, 2025). For these reasons, the Court finds that it has jurisdiction to consider the detention claims.

### B. Petitioner's Detention Is Indefinite[5]

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). As the Court explained, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

In *Zadvydas*, the Supreme Court explained that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." 533 U.S. at 682. Inadmissible noncitizens or those with certain criminal convictions may be detained beyond the removal period, 8 U.S.C. § 1231(a)(6), but the Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

The Court established a "6-month presumption" of reasonableness following the issuance of a removal order. *Id.* at 701. After the six-month period of "presumptively reasonable" detention ends, a petitioner seeking release from detention must show there is "good reason to believe that there is no significant likelihood of removal in the

---

[5] The Court has previously ruled on similar indefinite detention claims and applies the same *Zadvydas* framework here. *Vargas Istamo*, No. 5:25-cv-186, slip op. (Dec. 19, 2025); *Chang*, No. 5:25-cv-294, slip op. (Feb. 11, 2026).

reasonably foreseeable future." *Id.*; *see also Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (denying a *Zadvydas* claim where petitioner offers "nothing beyond conclusory statements"). Once a petitioner meets their burden, the burden shifts to the respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner's post-removal-order detention began, for purposes of the *Zadvydas* analysis, on August 21, 2025, when his order of removal became final. (Dkt. No. 22 at 6; Dkt. No. 31 at 4). Accordingly, Petitioner has now been detained after a final order of removal for over seven months. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has ended. Petitioner must next show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### 1. Petitioner Meets His Burden

Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. First, Petitioner asserts that the only country designated for removal is Iran, and he cannot be removed there because he was granted protection under CAT. Second, he alleges, and Respondents do not rebut, that no country has been identified for his removal nor have Respondents moved to reopen Petitioner's removal proceedings to designate an alternative country. Third, Petitioner does not have legal residence in any alternative countries.

Respondents argue that Petitioner has failed to meet his burden because his claims are conclusory and insufficient. Petitioner replies that the burden has been met. In the Fifth Circuit, a petitioner must show more than conclusory statements to establish good reason. *Andrade*, 459 F.3d at 543–44. Other district courts provide helpful persuasive authority in considering whether a petitioner meets this burden. For example, in *Trejo v. Warden of ERO El Paso East Montana*, the court found that Trejo met his burden by alleging that he received deferral of removal to El Salvador, his only country of citizenship, and "that ICE has not identified a third country that will accept him." No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). In another case, *Baltodano v. Bondi*, the petitioner met his burden by showing that he had been granted deferral of removal to Nicaragua, that he had no ties to any other country, and that travel

documents had not been secured for any third country. No. CV-25-1958, 2025 WL 3484769, at *4 (W.D. Wash. Dec. 4, 2025). Other courts have found that the expiration of the presumptively reasonable six-month period is enough to meet the burden. *Iakubov v. Figueroa*, No. CV-25-3187, 2025 WL 2640218, at *2 (D. Ariz. Sep. 15, 2025); *Pham v. Bondi*, No. 2:25-CV-1835, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

Here, the Court finds that Petitioner presents sufficient evidence to meet the burden. His only country of citizenship is Iran, and he does not have legal residency status in any other countries. His expired visitor visa to Brazil did not facilitate his removal to that country as evidence by HQ-RIO's rejection. He cannot be removed to Iran because he was granted protection under CAT. He has not been notified of a third country for removal. There is no evidence in the record that any other country has agreed to accept his removal. Each of these facts supports his assertion—and goes beyond conclusory statements—that he has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and he has met his burden to establish good reason.

### 2. Respondents Fail to Meet Their Burden

Because Petitioner has shown good reason, the burden then shifts to Respondents to provide evidence sufficient to rebut the showing. Respondents put forth that "ICE has accomplished removals to third countries over the past few years and ERO is working on third country requests." (Dkt. No. 31 at 5).

The evidence presented by Respondents fails to rebut Petitioner's good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Officer Aguilar's declaration indicates that ERO only began conducting custody reviews after Petitioner filed his petition. (*See* Dkt. No. 31-1 at 2). Aside from a request made to HQ-RIO to request acceptance of removal to Brazil and a follow-up request, no other inquiries have been made. (*See id.*). Furthermore, the request for removal to Brazil was denied. (*Id.*). The only assertion related to ongoing efforts is that "HQ-RIO informed ERO that they would be working on the third country request and not pursue third country assistance at the office level." (*Id.*).

To rebut a showing of good reason, Respondents must "respond with evidence sufficient to rebut [a petitioner's] showing." *Zadvydas*, 533 U.S. at 701. District courts in

this circuit have held that this burden cannot be met with "pending requests for travel documents, alone." *Trejo*, 2025 WL 2992187, at *5 (collecting cases). In *Trejo*, the petitioner was detained for the execution of a removal order on March 27, 2025, and ERO sent an inquiry to Mexico on April 10, 2025; ERO sent inquiries to two additional countries on May 6, 2025. *Id.* at *2. In ruling on the petition in October 2025, the court there found that those facts weighed in favor of Respondents because the requests were made within weeks of the beginning of Trejo's detention, and the detention just nearly exceeded the six-month presumptively reasonable period. *See id.* at *6. Ultimately, the court still found that Respondents could not meet their burden because the evidence was insufficient to rebut Trejo's showing of good reason. *See id.* The Court finds the reasoning in *Trejo* persuasive.

Here, Petitioner's post-removal-order detention has lasted over seven months. He is not able to be removed to Iran, his only country of citizenship, because he was granted relief under CAT. Unlike in Trejo's case, ERO sent a request for assistance removing Petitioner to Brazil nearly six months after his post-removal-order detention began in August. An additional request was made after the first request was denied, and the only information available over one month later is that HQ-RIO is working on the request for a third-country removal. While Respondents contend that ERO is actively working on Petitioner's removal, the Court finds that these efforts and the evidence presented by Respondents do not rebut Petitioner's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### 3. Respondents Are Not Entitled to Judgment as a Matter of Law

As the movants in a motion for summary judgment, Respondents carry the burden to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Based on the Court's analysis of the reasonableness of Petitioner's detention set forth above, Respondents are not entitled to judgment as a matter of law. Because Respondents have not rebutted the showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the motion for summary judgment is denied.

*4. Petitioner Is Entitled to Release*

The Court finds that Petitioner's continued detention violates due process and the INA because there is no significant likelihood of removal in the reasonably foreseeable future. For that reason, the Court determines that he is entitled to relief on the indefinite detention claims in his petition. Because the Court finds that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner must be released. *Zadvydas*, 533 U.S. 701 (holding that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). The Court orders his release as set forth below.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Response to Petition for Writ of Habeas Corpus and Motion to Dismiss, (Dkt. No. 31), is **DENIED**. Petitioner's Emergency Amended Petition for a Writ of Habeas Corpus, (Dkt. No. 22), is **GRANTED in part and STAYED in part**.

The Court **ORDERS** Respondents to release Petitioner **by April 8, 2026, at 5:00 p.m.** Respondents must notify his counsel of the exact time and location of release **no less than two hours** before his release.

The Court **ORDERS** that Petitioner cannot be re-detained without a hearing before this Court to determine whether there has been a material change in circumstances; and he may only be subject to detention if there is a material change in circumstances. The 10-day notice provision from the Court's March 17 Order, (Dkt. No. 30), **REMAINS IN EFFECT**.

No later than **April 9, 2026, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning Petitioner's release. The parties should also notify the Court of the conditions, if any, of his release.

It is so **ORDERED**.

**SIGNED** on April 7, 2026.

John A. Kazen
United States District Judge